### HAMBURG–AMERICAN STEAM PACKET CO. v. BAKER.

(Circuit Court of Appeals, Fourth Circuit. February 7, 1911.)

No. 981.

1. SHIPPING (§ 84*)—INJURY TO STEVEDORE—VESSEL'S LIABILITY—DEFECTS.

Libelant, a stevedore, while assisting in unloading a vessel, was precipitated into the hold as he was endeavoring to remove a portion of a hatch by the giving way of a hatch cover, on which he stood, due to the fact that the crossbeam on which the fore and after rested was sprung, increasing the distance to be reached by the fore and after, and allowing the end to slip off. This condition had evidently been discovered, and bolts had been inserted to hold the fore and after in place. Held, that the injury was due to the fault of the vessel, and that libelant was entitled to recover.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 342, 349–351; Dec. Dig. § 84.*]

2. DAMAGES (§ 132*)—PERSONAL INJURIES—AMOUNT.

Libelant, a stevedore at the time he was injured by a defect in the vessel on which he was working, was 48 years old, a powerful man, with at least 10 years' expectancy of strength and vigor. He had been foreman of a gang and was a good workman. Vertebræ were broken, and he was disabled by his fall for life; his physician testifying that his disability would probably be of a progressive character. Held, that he was entitled to an allowance of $4,500.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 178, 372–385; Dec. Dig. § 132.*]

Appeal from the District Court of the United States for the District of Maryland.

Suit in admiralty by Henry Baker against the Hamburg-American Steam Packet Company. Decree for libelant (179 Fed. 271), and defendant appeals. Affirmed.

This is an action brought by the appellee, an employé of the Lorant Stevedore Company which discharged cargoes from the ships of the appellant at Baltimore as contracting stevedore, to recover damages for injuries sustained by him on the appellant's steamship Sevilla, at about 9 o'clock on the night of Thursday, June 10, 1909, while the appellee was engaged in taking hatches off the middle section of hatch No. 2.

This hatch was 26 feet long and 17 feet wide and was divided into 3 sections, fore and aft of the ship, by 2 heavy iron crossbeams, or strongbacks and each section had 3 rows of hatch boards, or hatches; the row amidships being short hatches resting on iron fore and aft beams, and the port and starboard rows being long hatches, supporting the short hatches, to the hatch combings.

The discharging was done by men working day and night; the night gangs going to work at 6 o'clock at night and working through the night until 7 in the morning, and the day gangs coming on at 7 and working through the day until 6 at night.

During the day of Monday, June 7th, there were 28 men engaged in removing the cargo from hatch No. 2. These men were working under Busch, foreman, and were designated as the Turner gang, and while thus employed discharged 625 bales of broom corn and 820 bags of potash.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

During the night of Monday there were two gangs working in that hatch, the Rheuboltom gang of 22 men and the Simmons gang of 26 men, and they unloaded 950 bags of potash, working from 6 to 11, and from 12 to 2, when the work was stopped by the rain.

During the day of Tuesday the day gang in that hatch discharged from 7 a. m. until 5 p. m., losing 1½ hours on account of rain during the day and leaving at 5 on account of rain.

During the night of Tuesday, June 8th, the Cheeks gang, to which the appellee belonged, worked in hatch No. 1 from 6 until 3 a. m. and then worked in hatch No. 2 from 3 until 7, discharging 322 bags of potash from hatch No. 2.

During the day of Wednesday the day gang worked from 7 a. m. until 6 p. m. and discharged 1,850 bags of potash from hatch No. 2, losing one hour during the day on account of rain.

During the night of Wednesday the Cheeks gang worked in hatch No. 2 from 6 p. m. until 7 a. m. and discharged 1,665 bags of potash, 22 casks of potash, and 225 bales of broom corn, losing half an hour on account of rain.

During the day of Thursday, June 10th, the day gang worked in hatch No. 2 from 7 a. m. till 5:30 p. m. and discharged 500 bags of potash, 49 casks of potash, and 143 casks sal ammoniac; it having rained all day off and on, and the men quitting work at 5:30 on account of a heavy shower.

During the night of Thursday, June 10th, the Cheeks gang, to which the appellee belonged, went to work in this hatch at 6 p. m. and discharged 250 sacks of potash through the after section of the hatch; that section having been left open by the day gang, who removed the hatches therefrom on Thursday morning. When the 250 bags of potash had been discharged, in sling loads of 6 to 8 bags, the appellee and Carter were called up from the hold to remove the hatches from the middle section of the hatch by Cheeks, the deckman, who got his orders from the foreman. The appellee and Carter pulled back the tarpaulin, and the appellee got on top of the hatch, and, using his cotton hook through the rings in the hatches, lifted out the hatches and passed them along to Carter who stowed them on deck. They commenced aft at the after crossbeam and worked forward and had removed the hatches on the starboard side, all of the port side hatches, and all of the middle row except the two forward ones, and the appellee was standing on the sole remaining starboard long hatch, next to the forward crossbeam, and had his hook in the ring of the second short hatch and was pulling it up, when the fore and aft on which rested the two short hatches and the midship of the starboard long hatch, on which the appellee was standing, and the three hatches and the appellee all fell into the hold, and the appellee was injured.

At the close of the testimony the learned judge who presided at the trial stated: That in the opinion of the court the proof showed that the aft crossbeam was sprung so as to increase the distance to be reached by the fore and afters which sustained the section of the hatch cover on which the appellee was standing. That, when the fore and afters of the aft section were forced into place, they pushed the bend in the crossbeam forward and straightened it, and then there was resting place enough for the fore and afters of the next section to hold on, which was a very unsafe condition. That it was well known, in order to handle hatch covers, the men must go upon the hatch, and under the circumstances it was the duty of the appellant to make such place reasonably safe so as to bear the weight of persons necessarily employed thereon. The court held that the condition of the hatch in this respect was not such as to bear the strain incident to the uses for which it was employed, and that the failure to keep the same in proper condition was the fault of the ship.

The court below therefore found in favor of the libelant, and a decree was entered allowing the libelant the sum of $4,500, from which finding and decree an appeal was taken to this court.

Frederick M. Brown (Robert H. Smith and A. Leonard Brougham, on the brief) for appellant.

George T. Mister (Beverly W. Mister and Daniel B. Chambers, on the brief), for appellee.

Before PRITCHARD, Circuit Judge,. and ROSE and McDOW-ELL, District Judges.

PRITCHARD, Circuit Judge (after stating the facts as above). The learned judge who heard this case below filed an opinion in which he disposed of the questions' involved therein in a very clear and concise manner. The opinion in question is as follows:

"This is one of those unfortunate accidents to stevedores which are far too common. Stevedores work under conditions of a good deal of danger at the best. They work at night as well as in the daytime; they work rapidly and with energy, and not always with the greatest care to their own safety, and it sometimes happens that they are injured without the fault of anybody but themselves. But, if it is shown that through the negligence of the ship-owners that they are given an unsafe place in which to work, and then the injury happens on that account, and without fault on their part, then the ship should be held liable.

"The sole question in this case is whether the injury is attributable to the fault of the ship. There is not a great deal of conflict in the testimony. The testimony is very clear that the crossbeam on which the fore and after rested was sprung out of its true line—that it was sprung after—the result naturally being to shorten the space on which the fore and after rested and rendered it likely to fall. That was a very essential defect. The fore and afters must have sufficient resting place to make them secure. The consequence was that when the libelant, standing on one of the hatch covers, which rested on these fore and afters, exerted himself by stooping over to reach one of the hatch covers with a hook and pulled upon it to raise it, the whole thing came down, and he and the hatch cover and the fore and after were precipitated into the hold about 35 feet below.

"The proof is very strong that the aft crossbeam was sprung and that increased the distance to be reached by these fore and afters which sustained the section of the hatch cover on which the man was standing. It seems to be proven, not by mere preponderance of evidence, but to a demonstration that the crossbeam was sprung aft. It is proven that the next day, when they attempted to put in the fore and afters of the next section, the crossbeam was so much sprung that they could not get them in. They could only do it by pounding with the hatch covers and forcing the fore and afters into place. This had the effect of driving the bend in the cross section into place and correcting the fault and that is probably the way it had been done when the ship came into port. When the fore and afters of the aft section were forced into place, they pushed the 'bend in the crossbeam forward and straightened it, and then there was resting place enough for the fore and after of the next section to hold on.

"That, it seems to me was a very unsafe condition. It is well known that in order to handle the hatch covers the men must go upon the hatch, and therefore they must be made reasonably safe to bear that weight and to hold their position under that strain, and if they are not and that is a permanent condition of the hatch of the ship, it is the fault of the ship. In this case it has led to a disastrous result.

"It is said that there were bolts to hold these fore and afters in place. That, in itself, shows that there was some special occasion for bolts, and a natural conclusion is that they were put in because of this bend in the after . crossbeam. Now, without a special warning and a very special warning, it would not be supposed by the stevedores that while in a port these fore and afters would not be sufficient to bear a man's weight. At sea where there is a. great strain upon the working of the ship, then they might have needed those bolts as a contrivance to help out the strain. Could it be anticipated that the hatch covers were so weakly supported that they would give way under the ordinary weight of a man? The fact that the bolts were used, I think, tends to show that there was a weakness intended to be overcome by this very unusual device. It could not be presupposed that these fore and afters should be bolted to make them safe to stand on.

"I find that the libelant has made out a case which entitles him to dam-

ages. The amount of damages is a somewhat difficult question. This injured man is 48 years of age; he certainly had at least 10 years' expectancy of strength and vigor. He was a powerful man, had been foreman of the gang, and was a good workman, and he is entirely disabled for life. Vertebrae in his back are broken. He has suffered a great deal and will continue to suffer, and the physicians say that his disability is probably of a progressive character. I do not think I can allow him less than $4,500 considering the character of the injury and the permanent disability which he has suffered."

After a careful consideration of the evidence in this cause, we find ourselves in entire accord with the findings of fact and conclusions of law announced by the court below, and we adopt the same as the opinion of this court.

However, we deem it proper, in this connection, to say that certain depositions have been taken in this court on behalf of the respondent, and that it is insisted that this evidence should turn the scale in favor of the respondent. The libelant objects to the admissibility of this evidence. We do not find it necessary to pass upon these objections because in our opinion, even if that testimony be considered, we would still agree with the conclusions of the court below. In so saying we are not, however, to be taken as even impliedly sanctioning the taking of additional testimony in this court in the way and under the circumstances disclosed by this record.

For the reasons stated, the decree of the lower court is affirmed